```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------X
                                            :
FEDERAL HOUSING FINANCE AGENCY, etc.,       :
                                            :
                      Plaintiff,            :    11 Civ. 6202 (DLC)
           -v-                              :
                                            :    OPINION & ORDER
MERRILL LYNCH & CO., et al.,                :
                                            :
                      Defendants.           :
                                            :
-------------------------------------------X
```

APPEARANCES:

For Plaintiff Federal Housing Finance Agency:
Philippe Z. Selendy
Kathleen M. Sullivan
Adam M. Abensohn
Jordan A. Goldstein
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601

For Defendants Merrill Lynch & Co., Inc.; MLPF&S
Inc.; Merrill Lynch Mortgage Lending, Inc.;
Merrill Lynch Mortgage Capital, Inc.; First
Franklin Financial Corp.; Merrill Lynch Mortgage
Investors, Inc.; Merrill Lynch Government
Securities, Inc.
Brendan v. Sullivan, Jr.
David S. Blatt
Edward J. Bennett
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005

For Defendants Donald C. Han, Matthew
Whalen, Brian T. Sullivan, Michael M.
McGovern, Donald J. Puglisi, and Paul Park:
Daniel C. Zinman
Neil S. Binder
Richards Kibbe & Orbe LLP
One World Financial Center
New York, New York 10281-1003

DENISE COTE, District Judge:

This is one of sixteen actions currently before this Court in which the Federal Housing Finance Agency ("FHFA" or "the Agency"), as conservator for Fannie Mae and Freddie Mac (together, the "Government Sponsored Enterprises" or "GSEs"), alleges misconduct on the part of the nation's largest financial institutions in connection with the offer and sale of certain mortgage-backed securities purchased by the GSEs in the period between 2005 and 2007.[1]  As amended, the complaints in each of the FHFA actions assert that the Offering Documents used to market and sell Residential Mortgage-Backed Securities ("RMBS") to the GSEs during the relevant period contained material misstatements or omissions with respect to the owner-occupancy

---

[1] The sixteen cases are: FHFA v. UBS Americas, Inc., et al., 11 Civ. 5201 (DLC); FHFA v. JPMorgan Chase & Co., et al., 11 Civ. 6188 (DLC); FHFA v. HSBC North America Holdings, Inc., et al., 11 Civ. 6189 (DLC); FHFA v. Barclays Bank PLC, et al., 11 Civ 6190 (DLC); FHFA v. Deutsche Bank AG, et al., 11 Civ. 6192 (DLC); FHFA v. First Horizon National Corp., et al., 11 Civ 6193 (DLC); FHFA v. Bank of America Corp., et al., 11 Civ. 6195 (DLC); FHFA v. Citigroup Inc., et al., 11 Civ. 6196 (DLC); FHFA v. Goldman, Sachs & Co., et al., 11 Civ. 6198 (DLC); FHFA v. Credit Suisse Holdings (USA), Inc., et al., 11 Civ. 6200 (DLC); FHFA v. Nomura Holding America, Inc., et al., 11 Civ. 6201 (DLC); FHFA v. Merrill Lynch & Co., Inc., et al., 11 Civ. 6202 (DLC); FHFA v. SG Americas, Inc., et al., 11 Civ. 6203 (DLC); FHFA v. Morgan Stanley, et al., 11 Civ. 6739 (DLC); FHFA v. Ally Financial Inc., et al., 11 Civ. 7010 (DLC); FHFA v. General Electric Co., et al, 11 Civ. 7048 (DLC).  The FHFA has also brought two similar actions, which are pending in federal courts in California and Connecticut.  See FHFA v. Countrywide Financial Corp., et al., No. 12 Civ. 1059 (MRP) (C.D. Cal.); FHFA v. Royal Bank of Scotland, No. 11 Civ. 1383 (AWT) (D. Conn).

status, loan-to-value ("LTV") ratio, and underwriting standards that characterized the underlying mortgages.[2] On the basis of these allegations, the complaints assert claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, l(a)(2), o; the Virginia Securities Act, VA Code Ann. § 13.1-522(A)(ii), (C); and the District of Columbia Securities Act, D.C. Code § 31-5606.05(a)(1)(B), (c). In six of the cases, including this one, the Agency has also asserted claims of fraud and aiding and abetting fraud under the common law of New York State against certain entity defendants (the "Fraud Claim Cases"). As pleaded, these fraud claims attach to each of the categories of misstatements upon which the plaintiff's securities law claims are based.

The Court has already issued three Opinions addressing motions to dismiss in two other cases brought by the FHFA:

---

[2] The Amended Complaint pleads defendants' statements regarding the credit ratings of the Certificates as a separate category of misstatement under the Securities Act and, in the cases with fraud claims, fraudulent representation. Certain defendants in this litigation have argued that the ratings are the opinions of the credit rating agencies and that the failure to allege subjective falsity on their part is fatal to the plaintiff's claims in this regard. See UBS I, 858 F. Supp. 2d at 325-27. This argument mistakes the plaintiff's claim, which is not that the ratings themselves were false. FHFA challenges representations in the Offering Materials that the reported credit rating related to the actual loan collateral for the securitization. The Amended Complaint alleges that the ratings were inflated and did not in fact apply to that collateral, since the defendants provided the ratings agencies incorrect data regarding the loan population.

Federal Housing Finance Agency v. UBS Americas, Inc. et al., 858 F. Supp. 2d 306 (S.D.N.Y. 2012) ("UBS I"); Federal Housing Finance Agency v. UBS Americas, Inc., et al., No. 11 Civ. 5201 (DLC), 2012 WL 2400263 (S.D.N.Y. June 26, 2012) ("UBS II"); and Federal Housing Finance Agency v. JPMorgan Chase & Co., et al., 11 Civ. 7188 (DLC), 2012 WL 5395646 (S.D.N.Y. Nov. 5, 2012) ("Chase").  Familiarity with those Opinions is assumed; all capitalized terms have the meanings previously assigned to them.

Following this Court's decision of the motion to dismiss in FHFA v. UBS, discovery began in all of the coordinated cases. Pursuant to a June 14 Pretrial Scheduling Order, briefing of defendants' motions to dismiss in the remaining fifteen cases has occurred in two phases, with the motions in this case and the other Fraud Claim Cases becoming fully submitted on October 11, 2012.  The motions in the remaining nine cases are scheduled to be fully submitted November 9, 2012.  Depositions are to begin in all cases in January 2013, and all fact and expert discovery in this matter, 11 Civ. 6202 (DLC), must be concluded by December 6, 2013.  Trial in this matter is scheduled to begin on June 2, 2014.

DISCUSSION

This case concerns 88 RMBS Certificates purchased by the GSEs between September 2005 and October 2007.  The Certificates

correspond to 72 independent securitizations, each offered for sale pursuant to one of ten shelf registration statements. The lead defendant is Merrill Lynch & Co. ("Merrill"). Various corporate and individual affiliates of Merrill are also defendants, including individual defendant Donald C. Han, who served as the Treasurer of Merrill Lynch Mortgage Investors, the depositor for 62 of the 72 securitizations. Merrill affiliates also sponsored 60 of the 72 securitizations and served as lead underwriter for all of them.

Pursuant to the June 14 Pretrial Scheduling Order, the defendants jointly moved to dismiss the Amended Complaint on July 13, 2012 (the "Joint Motion"). Defendant Han filed a separate motion to dismiss, which concerned only the claims against him. The motions were briefed and became fully submitted on October 10, 2012.

The Joint Motion presses several arguments that have been addressed in this Court's previous Opinions in this litigation, taking particular aim at the adequacy of the Agency's fraud allegations. The Court hereby adopts by reference the reasoning and, to the extent they are relevant here, the rulings of those prior Opinions.[3]

---

[3] In particular, defendants' argument regarding the adequacy of certain of the plaintiff's control-person allegations was fully addressed by the Court's decision in UBS I. See 858 F. Supp. 2d at 333.

5

As in Chase, the motion to dismiss argues that the FHFA's scienter allegations are insufficient to support its fraud claims. These defendants' footprint in the mortgage-backed securities market differed somewhat from that of the defendants in Chase. Despite this fact and the different allegations that flow from it, however, the Amended Complaint fails and survives in similar fashions. As in Chase, the facts alleged in the Amended Complaint are sufficient to plead fraud with respect to the Offering Materials' representations regarding mortgage-underwriting standards. With respect to the scienter component of FHFA's fraud claims based on LTV and owner-occupancy information, however, the Amended Complaint relies entirely on the disparity between the statistics reported by the defendants and the results of the Agency's own analysis. As explained in Chase, when properly corroborated, such disparities may be sufficient to allege recklessness in support of a fraud claim. But mere negligence in conducting due diligence is not equivalent to reckless disregard of the truth. Chase, 2012 WL 5395646, at **12-13. Without additional support, the disparities pointed to by FHFA are insufficient to allege

---

The Joint Motion also makes several arguments in the margin that are not addressed by this Opinion. As noted in Chase, 2012 WL 5395646, at *18 n.18, it is well established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." Tolbert v. Queens Coll., 242 F.3d 58, 75 (2d Cir. 2001). The defendants remain free to raise these arguments on summary judgment.

fraudulent intent with the specificity required by Rules 8(a) and 9(b), Fed. R. Civ. P.  Accordingly, the defendants' motion to dismiss is granted with respect to the plaintiff's fraud claims based on LTV and owner-occupancy reporting.[4]

The defendants also raise several arguments that were not fully addressed by this Court's prior Opinions.  These arguments will be addressed in turn.

I.  Allegations Against Defendant Han

Defendant Han's effort to obtain dismissal of the FHFA's allegations against him likewise fails.  The Amended Complaint alleges that on August 5, 2005, defendant Merrill Lynch Mortgage Investors ("MLMI") filed a shelf registration statement -- SEC File Number 333-127233 -- that Han signed, listing his title as "Treasurer" (the "Initial Registration Statement").  Twelve days later MLMI filed an amended shelf registration statement under the same file number that omitted Han's name and listed Brian Sullivan, also a defendant in this action, as "Treasurer" (the "Amended Registration Statement").  Eighteen of the GSE

---

[4] Defendants also argue that Amended Complaint fails to give rise to a strong inference of scienter with respect to the plaintiff's claims of credit-rating fraud.  But given the allegation that defendants provided the same false information to the ratings agencies that they included in the Offering Materials, allegations tending to show recklessness with respect to the one support a similar inference with respect to the other.  Thus, plaintiff's allegations of credit-rating fraud survive insofar as they rely on the defendants' provision of false information regarding underwriting standards to the ratings agencies.

7

Certificates at issue in this case were marketed using Prospectus Supplements associated with SEC File Number 333-127233. FHFA asserts claims against Han as a maker of false statements in the Prospectus Supplements pursuant to Section 11 and as a control-person pursuant to Section 15 and equivalent state-law provisions.

Han argues that the Initial Registration Statement never became effective and that, consequently, his signature cannot support the plaintiff's Section 11 and control-person allegations with regard to the 18 GSE Certificates, which he claims were issued pursuant to only the Amended Shelf Registration Statement. Section 11 provides that "every person who signed the registration statement" is liable for material misstatements or omissions contained therein. 15 U.S.C. § 77k(a)(1). The presence of an individual's signature on an SEC filing is also sufficient to allege control under the federal securities laws. See In re Worldcom, Inc. Sec. Litig., 294 F. Supp. 2d 392, 419 (S.D.N.Y. 2003).

The Securities Act and relevant SEC authority establish that the Initial Registration Statement remained in effect even after the filing of the amendment and that, accordingly, FHFA's claims against Han may proceed. The statute imposes liability for any material misstatements contained in "any part of the registration statement," 15 U.S.C. § 77k(a), and defines

8

"registration statement" to mean "the statement provided for in section 77f of this title, and includes any amendment thereto and any report, document, or memorandum filed as part of such statement or incorporated therein by reference."  15 USC § 77k(a).  Section 77f of Title 15, in turn, concerns the procedures and fees associated with the filing of an initial registration statement and only addresses the issue of amendment in passing.  See 15 U.S.C. §§ 77f(c) & (e)(1).  Moreover, SEC regulations prescribe a particular procedure whereby a registrant may withdraw "any registration statement <u>or any amendment</u> or exhibit thereto."  17 C.F.R. § 230.477.  The use of the disjunctive indicates that an amendment may be withdrawn while leaving intact the underlying, initial registration statement.  See <u>Columbia Gen. Inv. Corp. v. SEC</u>, 265 F.2d 559, 565 (5th Cir. 1959) (rejecting the argument that "with the filing of the amendment, the original filing evaporates").  Indeed, the same regulation separately provides for "withdrawal of an entire registration statement . . . before the effective date of the registration statement."  17 C.F.R. § 230.477.  But Han does not assert that Merrill followed this procedure with respect to the registration statement that he signed.  His motion to dismiss is therefore denied.

Han's argument relies exclusively on SEC Item 512 and cases interpreting it.  The regulation provides, in relevant part:

9

> [F]or the purpose of determining any liability under the Securities Act of 1933, each . . . post-effective amendment shall be deemed to be a new registration statement relating to the securities offered therein, and the offering of such securities at that time shall be deemed to be the initial bona fide offering thereof.

17 C.F.R. § 229.512(a)(2).  As the above-quoted language makes clear, however, Item 512 concerns post-effective amendments, not pre-effective amendments like the one at issue here.  In any case, the regulation does not purport to address the issue of whether the filing of an amended registration statement negates the original filing.  Rather, as previously explained in this litigation, the purpose of the quoted language is to make clear that post-effective disclosures "restart the clock on Section 11 claims," and avoid a scenario in which "'purchasers who acquired securities in a shelf offering more than three years after the initial registration would find their § 11 claims barred by the time limits of § 13, even if they bought the securities in reliance on a fraudulent, post-effective amendment to the registration.'"  UBS II, 2012 WL 2400263, at **3-4 (quoting Finkel v. Stratton Corp., 962 F.2d 169, 174 (2d Cir. 1992)).

II.  District of Columbia Blue Sky Claims

The defendants also assert that, in contradistinction to the Securities Act, the District of Columbia's Blue Sky statute requires a plaintiff to allege some element of reliance, even for simple misstatement claims.  The statute provides:

> A person shall be civilly liable to another person who buys a security if the person . . . [o]ffers or sells a security by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statement made, in the light of the circumstances under which made, not misleading, the buyer does not know of the untruth or omission and the offeror or seller does not sustain the burden of proof that the offeror or seller did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.

D.C. Code § 31-5606.05(a)(1)(B).

Nothing in the statute suggests that a plaintiff's reliance on a false statement is an element of the claim.  Moreover, courts interpret this provision in accordance with the case law interpreting Section 12(a)(2) of the Securities Act.  See, e.g., Hite v. Leeds Weld Equity Partners, 429 F. Supp. 2d 110, 114 (D.D.C. 2006).  That provision does not require a showing of reliance, Rombach v. Chang, 355 F.3d 164, 169 n.4 (2d Cir. 2004), and defendants do not suggest otherwise.

The only authority the defendants cite for their argument that a showing of reliance is necessary under the D.C. statute is Price v. Griffin, 359 A.2d 582, 588 (D.C. 1976).  But, according to Westlaw, this holding of Price has never been reaffirmed or relied upon by any other court.  That is perhaps not surprising given that the decision concerned a version of the D.C. Securities Act that was explicitly repealed in 2000. Securities Act of 2000 at § 804(a), D.C. Law 13-203, 47 DCR 7837.

IV. Remedies

Finally, defendants argue that FHFA's demands for rescission and punitive damages are improper and should be stricken. Neither of these arguments has merit.

A. Rescission

Defendants argue that notwithstanding the Court's earlier ruling that these claims are timely under the Securities Act and HERA, the plaintiff's demand for rescission must be stricken because it was not made within a reasonable time of the purchase of the securities. With the exception of its Section 11 claim, the plaintiff explicitly seeks rescission on each of its claims. The standard for awarding such relief, however, may vary depending on whether the source of the right is statutory.

The Securities Act provides that, subject to certain exceptions, any person who violates Section 12(a)(2)

> shall be liable . . . to the person purchasing such security from him, who may sue . . . <u>to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon tender of such security</u>, or for damages if he no longer owns the security.

15 U.S.C. § 77*l*(a) (emphasis supplied). The Blue Sky statutes contain substantially identical provisions. See D.C. Code § 31-5606.05(b)(1)(A); VA Code Ann. § 13.1-522(A). As should be plain from the statutory language, where a Section 12(a)(2) plaintiff continues to own the securities in question, her only

12

remedy is to tender the security for repurchase by the seller. Commercial Union Assur. Co., plc v. Miliken, 17 F.3d 608, 615 (2d Cir. 1994). Although the Securities Act does not use the term, courts generally refer to this remedy as rescission. See, e.g., id. Whether this characterization necessarily implies that the Securities Act remedy is subject to the same equitable defenses that would be available to a plaintiff's demand for rescission in a breach-of-contract action is open to debate, however.

Unlike a breach-of-contract plaintiff, a Securities Act plaintiff's right to rescission is statutorily grounded and does not spring from the inherent discretion of the court to fashion equitable remedies. Cf. In re Cathedral of the Incarnation in Diocese of Long Island, 99 F.3d 66, 69 (2d Cir. 1996) ("[C]ourts have some discretion to withhold equitable remedies but no discretion to withhold a remedy required by common law."). Indeed, in amending the Truth in Lending Act to impose a three-year limitation on consumers' statutory rescission rights, Congress arguably recognized the inapplicability of delay-based equitable defenses where rescission is provided by statute. See 15 U.S.C. § 1635(f); see also Hearing on S. 1630 and S. 914 Before the Subcomm. on Consumer Credit of the S. Comm. on Banking, Housing and Urban Affairs, 93rd Cong. 433 (1973) (statement of the United States Savings & Loan League) (noting

13

that pre-amendment law did "not place a reasonable time limit during which the right of rescission can be exercised").

The Supreme Court has also remarked that, under the remedial provisions of Section 12, the purchaser of securities "may keep his securities and reap his profit if the securities perform well during the [one year statute of limitations], but rescind the sale if they do not." Pinter v. Dahl, 486 U.S. 622, 637 n.13 (1988).  The same opinion cited approvingly one commentator's observation that Section 12 "is silent as to possible time limits on the buyer's conduct after discovery of the false statement," and his conclusion that "there being nothing in the section to the contrary, the buyer may do what he pleases so long as he brings suit within the stipulated [limitations] period." Harry Shulman, Civil Liability and the Securities Act, 43 Yale L.J. 227, 246-47 (1933) (cited in Pinter, 486 U.S. at 637 n.13).

Moreover, given that the Securities Act makes statutory rescission the exclusive remedy for a Section 12(a)(2) plaintiff who continues to hold the security, it would arguably be absurd to interpret the statute to admit of delay-based defenses to rescission where the plaintiff's underlying action remains timely.  See 3 William Blackstone, Commentaries *23 ("[I]t is a general and indisputable rule, that where there is a legal

14

right, there is also a legal remedy . . . whenever that right is invaded.").

Defendants note, however, that at least one district court in this Circuit has concluded that a Securities Act plaintiff may be found to have forfeited her right to rescission where the demand was made after a period of unreasonable delay. See Gannett Co. v. Register Pub'g Co., 428 F. Supp. 818, 827 (D. Conn. 1977) (construing Section 10(b) of the Exchange Act and Sections 12(2) and 17 of the Securities Act).  It is well established in this Circuit that an "unreasonable delay" defense may be asserted in response to a contract plaintiff's rescission demand, see Ballow Brasted O'Brien & Rustin P.C. v. Logan, 435 F.3d 235, 240 (2d Cir. 2006), and at least one Court of Appeals has applied the rule to a demand for relief under the implied cause of action provided by Section 10(b) of the Exchange Act. See Occidental Life Ins. Co. v. Pat Ryan & Assocs., Inc., 496 F.2d 1255, 1268 (4th Cir. 1974).  But defendants have pointed to no appellate authority that applies the rule where rescission is available by operation of statute.  One potentially relevant authority is Straley v. Universal Uranium & Milling Corp., 289 F.2d 370 (9th Cir. 1961).  In that case, the Court of Appeals for the Ninth Circuit held that although equitable defenses such as laches are not available to defeat a plaintiff's right to rescission under Section 12(a)(2), defenses such as waiver and

estoppel may be. Id. at 373-74. Straley, however, is not controlling in this Circuit, and its continued vitality is questionable in light of the Supreme Court's intervening statements in Pinter.

A defendant may certainly interpose a defense of delay to a demand for rescission based on common law fraud. The defendants have not, however, established that the plaintiff's delay in demanding rescission in this case was unreasonable. Their arguments largely rehash those that they and other defendants have made throughout this litigation regarding the plaintiff's failure to bring these cases earlier. But as has been noted in previous Opinions, the plaintiff's failure to bring these cases earlier can be explained by a number of factors, among them the desire to investigate fully prior to filing suit. Given the complexity of these cases and the resources of the parties, it certainly could not be said that any delay was unreasonable as a matter of law.

B. Punitive Damages

The defendants' argument that the punitive damages claim must be stricken does not require extended discussion. New York law, which governs the plaintiff's fraud claims, provides that punitive damages are permitted only where the plaintiff can demonstrate exceptional misconduct, "as when the wrongdoer has acted maliciously, wantonly, or with a recklessness that

betokens an improper motive or vindictiveness or has engaged in outrageous or oppressive intentional misconduct or with reckless or wanton disregard of safety or rights." Ross v. Louise Wise Services, Inc., 868 N.E.2d 189, 196 (N.Y. 2007) (citation omitted).  This requirement derives from the fact that the purpose of punitive damages is "not to remedy private wrongs but to vindicate public rights." Roncanova v. Equitable Life Assur. Soc. of U.S., 634 N.E.2d 940, 943 (N.Y. 1994).

The Amended Complaint adequately supports its demand for punitive damages.  FHFA alleges that the defendants acted recklessly by seeking to profit from ever more risky mortgage lending while, at the same time, passing on the risk (and ultimately the losses) associated with these practices to the public via their sale of securities to Fannie Mae and Freddie Mac.[5]  FHFA further maintains that the defendants' practices in this regard contributed to a housing crisis that spurred the most severe economic downturn this country has experienced since the Great Depression.  These allegations are sufficient to support the plaintiff's demand for punitive damages.

---

[5] Defendants strenuously resist any effort to equate Fannie Mae and Freddie Mac with the "general public," but the GSEs' importance to the American economy and their quasi-governmental status is well established.  Indeed, Merrill Lynch itself maintained a unit named "Merrill Lynch Government Securities, Inc.," that sold all but one of the Certificates at issue to Fannie Mae.

CONCLUSION

The defendants' September 7 motions to dismiss are granted with respect to the plaintiff's claims of owner-occupancy and LTV-ratio fraud and denied in all other respects.

SO ORDERED:

Dated:    New York, New York
          November 8, 2012

```
                          _____
                                  DENISE COTE
                          United States District Judge
```