**Reply in Further Support of Status Report re: Tranche 3 and 4 Non-SLG Sets**

May 16, 2013

<u>VIA ELECTRONIC MAIL</u>
The Honorable Denise L. Cote
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1610
New York, NY 10007-1312

Re:     *FHFA Actions*

Dear Judge Cote:

On behalf of Plaintiff Federal Housing Finance Agency ("FHFA"), we write in response to Defendants' letter to the Court dated May 13, 2013 ("Defs. May 13 Letter"), and in further support of the requests for relief that FHFA set forth in its Status Report, dated May 7, 2013 ("May 7 Status Report"), concerning the adequacy of the disclosure of Non-SLG Diligence sets by the Tranche 3 and 4 Defendants pursuant to the Supplemental Expert Scheduling Order dated February 27, 2013 (the "Order").

Defendants' submission demonstrates that Defendants are improperly limiting the scope of the Order in light of their failure to identify their Non-SLG Diligence Sets by early April, as the Order requires. FHFA requests that the Order be enforced in the manner set forth in its May 7 Status Report.

*The JP Morgan, Deutsche Bank, and RBS Securities Defendants*

Defendants misstate the area of disagreement between FHFA and JP Morgan, Deutsche Bank, and RBS Securities, and thus much of the argument made on behalf of these Defendants, *see* Defs. May 13 Letter at 4-6, is a *non sequitur*.

Each of these three Defendants has made clear in meet-and-confer sessions since early March that it has never regarded the Order to require the disclosure of Non-SLG Diligence Sets *other than* sets on which they intend to perform re-underwriting or loan file review. Thus, while Deutsche Bank and RBS Securities indeed have disclosed Non-SLG Diligence Sets on which they intend to perform "loan-file review," Defs. May 13 Letter at 3, they (and JP Morgan) have steadfastly maintained that they need not disclose any set on which they intend to perform any other "type of analysis," in the wording of the Order. *See* Order ¶ 6. JP Morgan, Deutsche Bank, and RBS Securities have refused to represent, as other Defendants have been willing to do, that they do not intend to perform any "type of analysis" on a set of non-SLG loans that has not yet been disclosed.[1]

---

[1]   This sets aside the "performance correlation" analysis that most Defendants described in their April 5 Disclosures and in meet-and-confer sessions as analysis they may present in support of their due diligence defense but that in their view nonetheless does not give rise to any obligation to disclose Non-
(footnote continued)

FHFA set forth in its April 18, 2013 letter to the Court the reasons that the Defendants' interpretation of the Order is erroneous. The Order obligates each Defendant to disclose "any set of loans" on which it intends to rely in presenting its due diligence defense and from which any members of the set are outside the SLGs. Order ¶ 6. The Court also addressed at the February 21, 2013 conference the interpretation that Defendants again implicitly urge in their May 13 letter. At that conference the Court said the following:

> [I]f you're intending at trial to look more closely at a set of the due diligence loans that fall outside the [SLG], *for whatever purpose, to re-underwrite them or not*, that needs to be disclosed, because the other side may choose to look at a different set, and everybody needs to figure out, based on those disclosures, what documents they need to gather . . . .

Feb. 21, 2013 Hr'g Tr. at 27:13-28:9 (emphasis supplied).

The Court thus made clear almost three months ago that Defendants must disclose all sets of non-SLG loans upon which they intend to rely in presenting their due diligence defenses. Defendants' assertion that they have assured FHFA that "they do not intend to present an analysis of any non-SLG loans in support of their due diligence defenses that would potentially require [Defendants] or FHFA to review any such individual loan files or guidelines," Defs. May 13 Letter at 5, does not establish compliance with the Order, because Defendants' "assurances" to FHFA have likewise been based on the false premise that so long as Defendants are not engaging in loan file review, FHFA would never do so.

FHFA seeks the remedy of preclusion as a last resort, only as to JP Morgan, Deutsche Bank, and RBS Securities—and only as to Non-SLG Diligence Sets other than those already disclosed by Deutsche Bank and RBS Securities as Sets on which they intend to perform loan-file review. These Defendants have frustrated the objective of the Order by adhering to an interpretation of the Order that has no basis, based on the terms of the Order itself and the Court's prior guidance.

*The "Performance Correlation" Analysis*[2]

Defendants also oppose FHFA's request that the Court order a new deadline, of May 30, 2013, for Defendants to disclose the "sets" on which Defendants intend to perform "performance correlation" analysis, as described in FHFA's May 7 Status Report (and other information specified in paragraph 6 of the Order). In their April 5 Disclosures and during meet-and-confer sessions, Defendants described that this analysis would support their due diligence

---

SLG Diligence Sets. *See* Defs. May 13 Letter at 3-4. Defendants' April 5 Disclosures were annexed as Exhibit A to FHFA's April 18, 2013 Letter to the Court.

[2] FHFA uses this term for convenience although the Defendants have described the analysis in only general terms.

defenses.[3] The exception among the Defendants who intend to rely on performance correlation analysis was Goldman Sachs, which claimed that the analysis would be presented only as proof of negative loss causation.[4]

Defendants' position that they have not violated the Order in failing to disclose these "sets" is wrongly premised on the presumption that no type of "analysis" performed by Defendants, other than re-underwriting or loan-file review, could ever cause FHFA to wish to seek loan files or other documentation in the hands of third parties. FHFA addressed in its May 7 Status Report the ways in which the "performance correlation" analysis could cause it to seek loan files or other documentation. *See* May 7 Status Report at 3. It is therefore necessary for Defendants to identify any non-SLG sets relating to performance correlation now, so that FHFA can if necessary seek productions from third-parties that will enable expert discovery to proceed without delay.

Defendants' claims that the "performance correlation" analysis is merely historical and does not create non-SLG "sets" within the meaning of the Order are also without basis. Obviously the analysis is new; Defendants inconsistently argue that the analysis is "historical" but that they have to date been unable to determine "with certainty the exact analyses they may perform." Defs. May 13 Letter to Court at 4. This analysis will necessarily involve Non-SLG Diligence Sets of which, as of yet, FHFA has no notice. Defendants stated in meet-and-confer sessions that they might use loan characteristics (not specified to date), grades, or whether the diligenced loans were excluded from or included in the Securitizations as the foundation of their analyses. The grouping of loans by any of these parameters will create "sets," as Deutsche Bank implicitly conceded in disclosing on April 5 a subset of loans, for loan-file analysis, that they have since stated represents all diligenced loans that were graded 3 and above.

The illogic of Defendants' opposition to disclosing the "performance correlation" sets is exposed when they state that because "FHFA already knows the type of analysis Defendants may conduct . . . it should be capable of determining whether it will collect additional loan files to rebut this type of analysis." Defs. May 13 Letter to Court at 4. Under Defendants' reasoning, although it is "premature" for Defendants to know what type of analysis they will perform, or on which loans they will perform it, FHFA nonetheless can determine now the loan files or documents necessary to respond to that analysis, and can obtain those materials from third parties. The Defendants have the sequence backward.

---

[3] *See, e.g.*, April 5 Disclosure of Credit Suisse Defendants, at 3 (stating in paragraph describing "Credit Suisse's Affirmative Due Diligence Defenses" that evidence of those Defenses may include "qualitative, statistical or comparative analyses of the relative performance of the loans and underlying loan characteristics"); April 5 Disclosure of Bank of America and Merrill Lynch Defendants, at 2 (stating that Defendants "expect to establish due diligence and reasonable care defenses" by, among other things, "evidence and analysis" concerning "the relative performance of loans grouped according to [due diligence] results or actions [taken in response to such results]".

[4] *See* May 7 Status Report at 2; *see also* Defs. May 13 Letter at n. 6 (arguing that evidence relating to performance of loans will be "primarily relevant" to Defendants' negative loss causation defense or other non-diligence defenses).

Finally, it makes no difference in the case of the Goldman Sachs Defendants that they are disclaiming any intent to rely on the "performance correlation" analysis except as proof of negative loss causation. While paragraph 6 of the Order limited Defendants' April 5 disclosure obligations to sets of non-SLG loans on which Defendants intend to rely in presenting their due-diligence defenses, the disclosures were so limited only to distinguish them from SLG loans that Defendants might rely on in presenting those defenses. If Defendants are intending to rely *non*-SLG sets as opposed to SLG sets, for any reason, the same rationale that underlies paragraph 6 of the Order should apply and obligate Defendants to disclose those non-SLG sets. The Order was not meant to create a loophole that allows Defendants to rely on a non-SLG set without giving notice, simply because the non-SLG set does not relate to due diligence.

Defendants' submission makes apparent that Defendants had not advanced their planning and analysis sufficiently to meet the April 5 deadline, notwithstanding that the Order (which the parties collaborated on) was clear in its terms. While FHFA does not seek preclusion of the "performance correlation" analysis issue at this time, it respectfully requests that Defendants be ordered to disclose any non-SLG loan file "sets," method, and analysis relating to any "performance correlation" analysis on or before May 30, 2013.

*Defendants' Reservation of Rights*

Reservations of rights advanced by Nomura and HSBC, taken together with Defendants' opposition to the May 7 Status Report, raise the additional issue of whether Defendants are entitled to reserve the right to rely on analysis of Non-SLG Sets that they intend to disclose for the first time *after* FHFA discloses its expert reports on re-underwriting, in October 2013. In FHFA's view, Defendants' reservations of rights are ineffective to permit them to defer disclosing Non-SLG Sets and the associate information until after FHFA's re-underwriting reports are disclosed.

Nomura has asserted in meet-and-confer sessions that it is reserving its rights to analyze non-SLG loans related to its due-diligence defense although it did not identify any Non-SLG Diligence Sets on April 5. It justified its failure to identify the Non-SLG Diligence Sets it intends to analyze on grounds that FHFA has not yet specified defects in the SLG loans in the samples FHFA is re-underwriting.[5]

HSBC has refused to identify the "type of analysis" it intends to perform on a Non-SLG Diligence Set it identified in its April 5 Disclosure. (Ex. A (4/5/13 Letter from Conlon to Abensohn) at 2-3). HSBC's reasoning is the same as that offered by Defendants in asserting that they need not make further disclosures regarding any "performance correlation" analysis they are planning. Defs. May 13 Letter to Court at 4. Specifically, HSBC stated in its April 5 Disclosure that while it expects "in presenting its Affirmative Due Diligence Defense" to conduct

---

[5] Nomura and other Defendants have gone so far as to state that they may decide to re-underwrite or perform loan-file review in Non-SLG Sets based on the results of FHFA's re-underwriting. However, no Defendant has been able to explain why it would be relevant to re-underwrite Non-SLG Sets in response to FHFA's re-underwriting of SLG loans.

**The Honorable Denise L. Cote**                                                                                                   May 16, 2013

"qualitative, comparative, and/or statistical analyses of . . . the Non-SLG Diligence set" it identified, including "comparisons of the characteristics and performance of the loans (or a subset of loans)," it "has not yet determined the type(s) of analysis that it will perform, since the type(s) of analysis will depend on the specific defects identified FHFA's reunderwriting reports." (Ex. A at 3).

      Defendants are mistaken in maintaining that they can wait until after FHFA discloses its expert underwriting reports to disclose Non-SLG Diligence Sets on which they intend to rely. Paragraph 6 of the Order contains no exception for awaiting the results of FHFA's re-underwriting. To the contrary, it provides that a Defendant must disclose "any" Non-SLG Diligence Set, as well as the method by which that set was chosen, and "type of analysis" it intends to perform, by April 5. The reason for the lack of exception, moreover, is a matter of record. FHFA disclosed the samples of loans it intends to re-underwrite long ago and the Tranche 3 and 4 Defendants refused to participate in the "interim findings" process that would have given them early access to FHFA's interim findings regarding those loans. This refusal makes it particularly inappropriate for Defendants to invoke a right to rebut FHFA's findings as a justification for having failed to disclose Non-SLG Sets to date.

      The reservations of rights included in Defendants' April 5 disclosures are ineffective, insofar as they purport to enable Defendants to defer disclosing Non-SLG Sets until after FHFA discloses its re-underwriting reports.

\* \* \*

      For the foregoing reasons, FHFA respectfully requests that the Order be enforced in the manner FHFA set forth in its May 7 Status Report.

The Honorable Denise L. Cote						May 16, 2013

Respectfully submitted,

| | |
|---|---|
| /s/ Philippe Z. Selendy<br>Philippe Z. Selendy<br>(philippeselendy@quinnemanuel.com)<br>QUINN EMANUEL URQUHART &<br> SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>(212) 849-7000<br><br>*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. UBS Americas, Inc., FHFA v. JP Morgan Chase & Co., FHFA v. Deutsche Bank AG, FHFA v. Citigroup Inc., and FHFA v. Goldman, Sachs & Co.* | /s/ Richard A. Schirtzer<br>Richard A. Schirtzer<br>(richardschirtzer@quinnemanuel.com)<br>Adam Abensohn<br>(adamabensohn@quinnemanuel.com)<br>QUINN EMANUEL URQUHART &<br> SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br><br>*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. HSBC North America Holdings, Inc. and FHFA v. Nomura Holding America, Inc.* |
| /s/ Christine H. Chung<br>Christine H. Chung<br>(christinechung@quinnemanuel.com)<br>QUINN EMANUEL URQUHART &<br> SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br><br>*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. First Horizon National Corp., FHFA v. Bank of America Corp., and FHFA v. Credit Suisse Holdings (USA), Inc.* | /s/ Manisha M. Sheth<br>Manisha M. Sheth<br>(manishasheth@quinnemanuel.com)<br>QUINN EMANUEL URQUHART &<br> SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br><br>*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. JP Morgan Chase & Co., FHFA v. Barclays Bank PLC, FHFA v. Citigroup Inc., and FHFA v. Merrill Lynch & Co., Inc.*<br><br>/s/ Michael A. Hanin<br>Michael A. Hanin<br>(mhanin@kasowitz.com)<br>KASOWITZ, BENSON, TORRES &<br> FRIEDMAN, LLP<br>1633 Broadway<br>New York, NY 10019<br><br>*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. Ally Financial Inc., FHFA v. Morgan Stanley, and FHFA v. SG Americas, Inc.* |

cc:	All Counsel of Record